UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


RUSSELL SCHMERMUND                                                                                      PLAINTIFF

V.                                                                            CIVIL ACTION NO. 1:07cv1213-LTS-RHW

NATIONWIDE MUTUAL INSURANCE COMPANY                                              DEFENDANT

**<u>ORDER</u>**

There are numerous pending motions in this cause of action, mostly of an *in limine* nature (which will be treated by separate order). This order addresses the following motions filed by the Defendant, which will be referred to as Nationwide: [160] Motion for Summary Judgment; [162] Motion for Judicial Estoppel; [197] Motion to Bifurcate; and [198] Motion to Establish Jury Questionnaire.

Plaintiff's residence at 202 South Seashore Avenue, Long Beach, Mississippi, located approximately 1/3 of a mile from the Mississippi Sound, was reduced to a slab by Hurricane Katrina on August 29, 2005. He submitted a claim to Nationwide, his homeowners insurer. Plaintiff did not maintain flood coverage on his property.

Plaintiff submitted a claim to Nationwide for policy benefits. Nationwide made an initial advance payment of $2,500.00 for additional living expenses (ALE), and later made a second ALE advance in the same amount.

Nationwide retained an engineer to investigate Plaintiff's loss, who concluded that "damage [occurred] to the composite asphalt shingles, roof deck, and windows prior to the water rising," but because the engineer also found that tidal surge and wave action caused major structural failure, resulting in the collapse of the house, Nationwide denied the entire claim on the basis of its policy's flood exclusion and its anti-concurrent cause provision.

In August 2007, prior to Plaintiff's filing the instant cause of action, Nationwide, in what it describes as a "business decision," made a "voluntary payment" to Plaintiff assuring him that it did not preclude him from "pursuing further actions against Nationwide including mediation, arbitration or litigation. Your acceptance of this check does not constitute a release of any claims you may have against Nationwide for damages to your property." The total of the "voluntary payment" was $82,064.94, representing $57,635.12 for the Plaintiff's residence and $24,429.82 for his other structures (it appears that this latter figure exceeds the policy coverage and Nationwide's position on this particular loss is well taken).

1

The first paragraph of the letter sending the check advised Plaintiff that "[b]ased on all available and reliable evidence, we have attempted to calculate and separate the damages caused by wind from those caused by flood. Based upon our review of the evidence, we believe that there may be circumstances supporting an additional payment on your claim."

Nationwide maintains in its summary judgment motion that Plaintiff is not entitled to any additional recovery under his homeowners policy. For example, with respect to ALE, the policy requires "a covered loss," which Nationwide claims did not occur in this case. Yet Nationwide offers no explanation why it paid Plaintiff $5,000.00 in ALE following the storm, and the Court has concerns about inconsistent positions on this coverage.

The same may be said as to the anti-concurrent cause provision of the policy. While Nationwide disagrees with the Court's decision in *Dickinson v. Nationwide Mutual Fire Insurance Co., et al.*, No. 1:06cv198 (docket entries [145] [146] [150] ), the basis for its tender of payment in the instant case is precisely consistent with *Dickinson*, which was decided well after Nationwide's "business decision" here. The parties should understand that the Court intends to apply the anti-concurrent cause language in the manner dictated by the decisions in *Dickinson*.

Interestingly, in a letter dated October 23, 2005, and headed RESERVATION OF RIGHTS, Nationwide advised Plaintiff that there were potential coverage questions associated with the policy's flood exclusion. The letter's purpose was to formally notify Plaintiff that Nationwide's "*willingness* to investigate this claim does not constitute a waiver of any rights under the policy." (Emphasis supplied) Under Mississippi law, insurers are under a continuing duty to investigate claims. *See, e.g., Gregory v. Continental Insurance Co.*, 575 So. 2d 534 (Miss. 1991).

It is a close question on whether judgment is appropriate at this time on the issue of punitive damages, but, under the entirety of the circumstances, it is not for the Court to weigh the evidence or evaluate the credibility of witnesses, but must consider the evidence submitted by the parties in support of and in opposition to the motion and grant all reasonable inferences to the non-moving party, in this instance the Plaintiff. In other words, that evidence and those inferences drawn from it are viewed in the light most favorable to the non-moving party.

There are too many unanswered questions with respect to the manner in which this claim was handled and the decisions that were made. The parties should not take this to mean, in the final analysis, that the jury will be given a punitive damages instruction or one that deals with extra-contractual damages.

Turning to the [162] Motion for Judicial Estoppel, the Court is not persuaded by Plaintiff's explanation. While Nationwide's assessment of the Mississippi Development Authority (MDA) grant may be too expansive (although referring to it as "flood grant funds," it does not mention the Court's finding in *Dickinson* that "Nationwide's obligations under its

homeowners policy are not offset or reduced by the amount of the MDA grant, nor does the grant reduce the plaintiffs' total loss in the same way as a flood insurance recovery"), the Plaintiff's view is far too restrictive.

Nationwide argues that Plaintiff represented that his home sustained flood damage, and Plaintiff counters that he neither signed nor acknowledged anything as part of the MDA grant process admitting or conceding that he suffered flood damage. Plaintiff's is a limited reading of the grant program, for the grant materials expressly and clearly require that an applicant's home be outside the pre-Katrina designated flood zone (Plaintiff's home qualifies) on August 29, 2005, "*yet suffer[] flood damage as a result of Hurricane Katrina.*" (Emphasis supplied)

Additionally, on the damage assessment worksheet, the answer to the question whether flood damage was present is yes, and the MDA had information that Plaintiff did not have any flood coverage at the time of the storm. Simply put, by whatever name the theory or doctrine is called, Plaintiff may not reap the benefits of the MDA program designed to assist those outside the flood zone who suffered flood damage, and then urge that he did not qualify for them. Plaintiff will not be allowed to deny that the insured property experienced damage to some extent from the effects of storm surge flooding, and conversely may not assert that the destruction of his home was solely caused by the peril of windstorm.

At the same time, the award and receipt of the grant is a matter between Plaintiff and MDA, which may be affected by any damages Plaintiff may receive in this cause of action. However, except for the fact that Plaintiff–by participating in the grant process and accepting funds from it–is bound by the flood damage requirement, any other element of the MDA grant process is not admissible as evidence. The probative value of such evidence is substantially outweighed by confusion of the issues or misleading the jury. Fed. R. Evid. 403.

Plaintiff's position that Nationwide's hurricane coverage and deductible provision endorsement renders the flood exclusion ambiguous is without merit. Plaintiff ignores the decisions in *In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007), and *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007), in which the appellate court emphasized that the hurricane deductible endorsements on review expressly stated that all other provisions of the policies applied, "indicating that the flood exclusions remain in effect." *In re Katrina Canal Breaches Litigation*, 495 F.3d at 220. *See also Tuepker*, 507 F.3d at 355 (endorsement's concluding statement that "'[a]ll other policy provisions apply' unambiguously reflects that the endorsement does not enlarge or change the scope of coverage under the policy"). That same language is contained in the Nationwide endorsement in the instant case, and it will not be treated differently.

As for Nationwide's [197] Motion to Bifurcate, the trial of this case will be phased in accordance with Mississippi law with respect to the coverage claim, on the one hand, and punitive/extra-contractual damages, on the other. Judge Ozerden ruled recently that the scheduled trial in *Fowler v. State Farm Fire & Casualty Co., et al.*, No. 1:06cv489, now settled,

3

would be tried in three phases.  The first phase would consider the underlying contractual/coverage/negligence claims.  The second and third phases were to be reserved for punitive and extra-contractual damages.  This is a valid method.

*Broussard v. State Farm Fire and Casualty Co.*, 523 F.3d 618 (5th Cir. 2008), suggests that consequential or extra-contractual damages may be appropriate when punitive damages are not.  The Mississippi Supreme Court, in *United American Insurance Co. v. Merrill*, 978 So 2d 613 (Miss. 2007), held that attorney's fees are justified where punitive damages are awarded.  Depending on the outcome of the first phase, it follows that the non-contractual damages identified by Plaintiff potentially do not come into play until after the first phase (as an aside, the Court will rule separately on Nationwide's [187] [190] *in limine* motions aimed at debris removal coverage, and the claim for mental and emotional distress damages).  Thus, the only issue that will be tried in phase one is the coverage claim.  The subject(s) of any additional phases will be determined once the first phase is fully concluded.  Of course, counsel for each party may make statements at the beginning of each phase that is held.

Finally, Nationwide's [162] request to establish a jury questionnaire is not well taken.  The Court has already addressed this issue with its own questionnaire and acted consistent with its past practice of summoning a jury.  Counsel for the parties have the ability to conduct their own *voir dire* as allowed by the Court.

Accordingly, **IT IS ORDERED**:

Nationwide's [160] Motion for Summary Judgment is **DENIED**;

Nationwide's [162] Motion for Judicial Estoppel is **GRANTED**;

Nationwide's [197] request to bifurcate trial proceedings is **GRANTED IN PART** and **DENIED IN PART**.  Counsel may make statements at the beginning of each phase that is held.  Plaintiffs will be allowed to address the issue of punitive/extra-contractual damages in *voir dire* subject to further direction from the Court;

Nationwide's [198] Motion to Establish Jury Questionnaire is **DENIED**.

**SO ORDERED** this the 5th day of December, 2008.

> s/ L. T. Senter, Jr.
> L. T. SENTER, JR.
> SENIOR JUDGE